## IN RE GIP AH CHAN.

### HABEAS CORPUS. BEFORE HARTWELL, J.

### AUGUST, 1870.

In *habeas corpus* it is not competent to try over again the merits of a cause in which there has been a legal judgment pronounced, and mittimus issued by a Court of lawful authority; the only facts to be considered are those disclosed by the return; if the return shows illegality of proceedings, *habeas corpus* is the proper remedy.

In a petition for *habeas corpus*, brought by a servant imprisoned for desertion under the Master and Servant Statute, the Court considers that a decision as to the constitutionality of the law is not called for, although no doubt exists of the right and duty of the Court to decide such a question, when necessarily raised in *habeas corpus.*

A mittimus held fatally defective for not mentioning the name of the master to whom the servant is ordered to return.

The Court declines to hear evidence as to the invalidity of the contract by reason of fraud, duress or assignment without the servant's consent, those being matters within the Police Magistrate's jurisdiction.

No contract for personal services can be penally enforced by a Police Justice, except under the Master and Servants Act, and the present contract failing to comply with that act by reason of being assigned to parties not designated by name, and who cannot be ascertained precisely, the prisoner must be discharged.

### DECISION OF HARTWELL, J.

[As printed in the *Hawaiian Gazette*, August 10, 1870.]

The petition for a writ of *habeas corpus* was filed July 2d, by W. C. Jones, the prisoner's attorney, and states that the prisoner is illegally restrained of his liberty for no criminal matter, by J. H. Coney, Sheriff of Hawaii, by virtue of a process issued by D. H. Hitchcock, Police Justice of Hilo, at the suit of one R. V. Husbands; a rule was made to show cause why the writ should not issue.

The Attorney-General argued that the petition failed to show a *prima facie* case; that it should set forth the precise cause of detention if known, and that the writ should be denied, unless it appeared that the process under which the prisoner is held was not voidable merely, but actually void.

Mr. Stanley opposed the rule, in behalf of W. L. Green, the legal representative of Theophilus Metcalf, of the agent Husbands, and of the owners of the Metcalf plantation, whose names were not specified, with the exception of Gilbert Waller, claiming as one-fifth owner. Mr. Stanley argued that the case showed no probable cause and no want of jurisdiction in the Magistrate, and that in any case the writ should not issue to deprive parties of their rights to appeal or error.

Messrs. Thompson and Jones argued in support of the rule, that although the writ would be denied if on its own showing

the petition showed a case not within its purview, a specific statement, further than to allege illegal restraint for no criminal matter, was not requisite. The Court ordered the petition to be amended by statement of the cause of detention, whereupon the petitioners filed an amendment, reciting the process under which the petitioner is held. At a further hearing on the rule, Mr. Thompson argued that the process was issued under a void law, inasmuch as the prisoner was guilty of no crime, and Article 11 of the Constitution prohibits involuntary servitude except for crime; that the mittimus was void as it does not show the names of the agents and owners of the "Met. Plantation," and because it prescribes no limit to the time of the imprisonment, and is issued under section 1420, regardless of the amendment of the Act of 1860, which limits the imprisonment in this class of cases to a term not exceeding three months.

Mr. C. C. Harris, in behalf of the heirs of Theophilus Metcalf, argued against the rule, that this proceeding was not intended for an inquiry into the merits of the case, which can be done by appeal only. That this was a lawful process of a lawful Court, and must stand until declared void by a full Court on error. That Article 11 of the Constitution was intended against chattel slavery, and not against acts which the law has prohibited. That a crime means a *malum prohibitum* as well as a *malum per se;* that if the mittimus is defective from vagueness, this is not the mode to test its validity. That the amended law of 1860 refers only to second commitments by the magistrate, and it does not appear that this was such. That the Court will never issue the writ unless the law under which the magistrate acted is palpably and unanswerably unconstitutional.

Mr. Jones, in reply, argued that the writ of *habeas corpus* is a mode of exercising appellate jurisdiction in cases like this. It was thereupon ordered that the writ do issue as prayed for, returnable July 23, at which day the Marshal made return of the body of the prisoner, alleging the cause of his detention to be the mittimus of which a duplicate was set forth in the amended petition. Time was asked by Messrs. Stanley and

Harris to answer, and was fixed for July 27, at which day they filed this plea, viz: "And now come the undersigned, attorneys for the representatives of the Metcalf Plantation, and for answer submit that the return to the writ of *habeas corpus* is not full, in that it only sets forth a mittimus, and whereas in truth and in fact the subject matter in litigation before the Police Court at Hilo was desertion of the petitioner from service under a contract like unto the copy on file, but that the contract used in evidence, and under which the petitioner was brought before the Police Court of Hilo and tried, contained an endorsement in the words and figures following, to wit: 'I, J. S. Rogers, in consideration of the sum of $150 to me paid by Theo. Metcalf, do hereby assign this contract unto the said Theo. Metcalf, his representatives and assigns under the agreements and covenants within contained, which are to be done, kept and performed by the said Theo. Metcalf.

Witness my hand this 27th day of July, A.D. 1865.

(Signed)                    J. S. ROGERS.

Witness:

(Signed)              WM. G. IRWIN.'

"Also that the records of the Court will show that R. V. Husbands, who made the complaint against the petitioner for desertion from service under such contract, was the agent of the representatives of Theo. Metcalf and manager of the Metcalf Plantation, and the undersigned submit that the return to the writ of *habeas corpus* should be amended and, if thereafter traversed by the petitioner, that a writ of *certiorari* issue to bring up the record of said Court. All of which the undersigned are ready to verify."

The petitioner admitted the facts alleged in the respondents' plea, and, at the request of respondents' counsel, filed the contract referred to and also the following plea, viz.: "And now at this day comes Gip Ah Chan, alias John Carpenter, alias Ah Sun, by his attorneys, W. C. Jones and Henry Thompson, and for reply to the return and amended return therein, respectfully states, that he admits that the subject matter of the

litigation before the Police Court at Hilo was the alleged desertion of petitioner from service under what purports to be a contract like unto the copy on file herein; he further admits that the said supposed contract, which was brought before the said Police Justice at Hilo, had what purports to be an endorsement such as is set forth in the said amended return; and he further admits that the records of the said Police Court will show that R. V. Husbands, who made the complaint against the petitioner for alleged desertion under said supposed contract, was the agent of the representatives of Theo. Metcalf and manager of the Metcalf Plantation.

"And thereupon, the petitioner avers that the said supposed contract was never executed by him; that he never executed any contract, but that under glowing promises of high wages and a prospect of speedy wealth in a foreign country, to him indefinite, he was induced to go on board the Prussian ship Matador, then lying in the Port of Macao, in the Empire of China, about the beginning of the month of June, A.D. 1865, and that some days after he had been on board the said ship, the paper purporting to be a contract now on file in this Court was thrust into his hands without his knowing the nature of its contents, and without any signing or executing of the same by him; that in company with many other of his countrymen he was carried by the said Prussian ship Matador to these Islands, where the said ship arrived about the 21st day of July, A.D., 1865; that he, in company with forty-nine of his countrymen, was landed without his consent and without knowing his destination; that he was sent to the Metcalf Plantation, on the Island of Hawaii, without his consent and without any knowledge of his destination; that he has there been forced to work and labor without his consent on said plantation, up to the time that he left the same about the 20th of June, A.D., 1870, and that since that period he has been held to service and labor without his consent by the representatives of said estate, until the time he left as aforesaid.

And thereupon the petitioner alleges:

1. That said supposed contract is not a legal document made under any law of this kingdom.

2. That any assignment of a contract for labor, provided such contract is valid and obligatory, without the consent of the laborer contracting, is illegal and void; and that the supposed transfer on what purports to be a contract on file herein, or the supposed assignment of the same, without the consent of the petitioner, is absolutely void in law.

3. That the servitude of the petitioner under the said Theophilus Metcalf and his representatives was involuntary.

4. That on the death of the said Theo. Metcalf, the petitioner was entitled to his discharge under the 1415th Section of the Civil Code, provided that said supposed contract had been obligatory upon him.

5. That the 1420th Section of the Civil Code is in direct conflict with the 11th Article of the Constitution of 1864: and the action of the Police Justice of Hilo under the same and the warrant of commitment are illegal and void.

6. That petitioner was not brought to this Kingdom under and by virtue of any law or authority of the Hawaiian Government.

7. That the Hawaiian Government, through the Board of Immigration, ignored the acts of the alleged pseudo agent of the Peruvian Government, refused to sanction them, or hold any intercourse with the said pseudo agent, and only gave a qualified permission to land the petitioner, together with forty-nine of his countrymen, in this Kingdom.

Wherefore, the petitioner prays that upon a full hearing of the matter, your Honor will discharge him under the writ of *habeas corpus* issued herein, and restore him to his liberty, with his costs in this behalf most wrongfully sustained."

To this plea the respondent's counsel filed this motion: "That so much of the petitioner's answer by way of traverse to return and amended return as is contained in said answer commencing at the words 'and thereafter,' in the 14th line, first page, and ending at the words 'left as aforesaid,' in the 15th

line, second page, and all points of argument thereafter contained, to wit, from that marked 1, to the word 'Kingdom,' in point marked 7 in the third page, be stricken from the answer by way of traverse, the same not being cognizable before this Court in the case now at issue, and impertinent to the point before the Court." The petitioner, with his answer, offered an affidavit, which, being objected to by the respondents on the ground that they were entitled to cross-examine the witnesses, was not admitted. The Court declining to order any part of the petitioner's answer to be stricken out, the respondents filed a demurrer to the portion thereof objected to as being cognizable only before the Court that tried the cause, and the petitioner joined issue. It was argued for the demurrer, that the respondents could not, by these summary proceedings, be debarred from a jury of the country; that this Court is not vested with jurisdiction to revise the action of the Police Court upon the facts alleged before him, nor could it be reviewed here by a single justice. The ruling of the 'Court appears in the opinion.

Mr. Thompson argued for the motion to discharge. The contract on file, admitted to be the only one on which the prisoner was tried, failed to show any signature by the prisoner, as required by law for its enforcement, nor is any written assent of the prisoner shown to the assignment of the alleged contract. By our statute of frauds, as well as by the Master and Servant Act, both contract and assignment must be signed. There can be no legal assignment of a personal trust. Even in partnership, a *delectus personarum* always exists; only property, like choses in action, and bills of exchange, are transferable by mere assignment of the holder—not contracts for personal service. Metcalf is shown to be dead by the pleadings of his executors and heirs. There is nothing in the assignment, if it were valid, about Metcalf's partners, and all power over the prisoner's person ceased at Metcalf's death. Metcalf could give no third party rights to the enforcement of the service after his own death.

Mr. Stanley, *contra*. The only question is whether this cause

was tried by a Court having jurisdiction under any constitutional law of this Kingdom. There is no doubt of this. The jurisdiction is clearly given under Sections 1418 *et seq.*, Civil Code. This contract was the property of Metcalf and his partners, Tucker and Waller, who have been decided by this Court to have an interest in it. By Section 1425, Waller and surviving partner has rights in the contract. Dormant partners have rights in such contracts. The legality of the assignment, and the effect of Metcalf's death, are not, however, before this Court. It would require evidence to show the facts, as much as any other facts tending to show illegality in the contract.

Mr. Jones, in reply: To give the magistrate jurisdiction, there must be a contract such as the law requires. This alleged contract no more affects the prisoner, or gave the magistrate jurisdiction to imprison him, than if it were a piece of blank paper. The Constitution of this Kingdom, granted in 1864, expressly repeals in Article 78 all laws repugnant thereto, and in Article 11 prohibits involuntary servitude, except for crime. This law, passed in 1859, is thus expressly repealed. There is no pretense that the prisoner has committed a crime: citing *Parsons vs. Trask*, 7 Gray, 476. The mittmus must specify the offense, or it is void; it should show that the prisoner was held to service by Theo. Metcalf, or his representatives. It sets forth no person as plaintiff, nor a suit by any person, nor that the prisoner was tried at all.

Mr. Harris, *contra*. The case of *Parsons vs. Trask*, if authority in Massachusetts, has been followed by no other Courts, so far as known. The decision in that case, if sound, does not apply in this. This contract specifies the place of its fulfilment, the nature of the business, the term of service, and the compensation therefor, and is a contract the enforcement of which is expressly provided for by the laws of this country. There is nothing similar to chattel slavery in the prisoner's condition. This is not involuntary servitude, for it was voluntarily incurred by the prisoner's own act, and may be avoided whenever he will consent to execute his contract. He has agreed to do certain

things. This is free, voluntary action. A slave had no right to wife, child, or to anything on earth, nor did any law or agreement, except his master's orders, govern him. As to the defects alleged in the mittimus, the common law is not the law here; in this respect, no rule or practice of any Court of this Kingdom requires a mittimus to set forth anything not contained in this. Only such defects will be considered as make the mittimus clearly void. Smith's Lead. Cases, 819. It must be a clearly unconstitutional law which would lead one justice of this Court to declare it to be so, contrary to the reiterated view of the Legislature. Metcalf's death is not in evidence, but admitting it, we still have a right to the judgment of the lower courts on the effect of our contract, and of all the circumstances relating to it. It is a contract to serve another, and such other as Rogers might indicate, and Rogers is not dead. The Court will consider only: 1, whether the magistrate acted under a visibly valid law; 2, whether the proceedings are free from irregularities which do not affect their validity; 3, whether the judgment was under the law, and authorized by it.

Mr. Jones, in reply. In questions affecting the liberty of the subject, the Court will weigh every argument very carefully. These proceedings strike at the liberty of the man. This contract is before the Court. It is in three languages: English, Spanish, and Chinese. The English is headed, "Emigration to the Sandwich Islands;" the Spanish, "Emigracion China Para el Peru." It is invalid on the face of it for want of mutuality. Slavery has grades. This is like Mexican peonage.

PER CURIAM. I am aware of the importance attached to some of the questions raised in this case, and I have given my entire attention to the arguments and considerations presented by the learned counsel.

During the progress of the cause, the question of the nature and extent of the inquiry which may be legally made under a writ of *habeas corpus* arose upon the respondent's demurrer to the petitioner's reply.

I ruled that if the return showed a judgment not authorized

3

by law, or that the prisoner was condemned for an offence not known to the law, or that the proceedings were based on a law which is in violation of the Constitution of this Kingdom, or that events like the insanity of the prisoner, or death of the master, had occurred since the trial, *habeas corpus* was the proper remedy; but that it was not competent to try over again the merits of causes which have been tried by a Court of lawful authority and jurisdiction, and on which a lawful judgment was pronounced, and a legal mittimus issued, and that the only facts to be considered in this case are those which are disclosed in the return and amended return. In giving this ruling I reviewed the cases that had been tried in this Court, and gave reasons why the evidence offered by the petitioner was not cognizable in this proceeding.

Of the several objections, within this ruling, offered to the legality of the prisoner's confinement, the most important is that the Act under which he was tried is repugnant to the Constitution, and therefore null and void. It is in the Constitution that we find the guarantees of our rights to life, liberty, and the pursuit of happiness, which that instrument solemnly declares to be inalienable, to be taken from no person "except by due process of law." The written law of England is determined by their Parliament, except in so far as the Courts may declare the same to be contrary to the unwritten or customary law, which every Englishman claims as his birthright. Our Legislature, however, like the Congress of the United States, has not the supreme power held by the British Parliament, but its powers and functions are enumerated and limited, together with those of the Executive and Judicial departments of government, by a written Constitution. No act of either of these three departments can have the force and dignity of law, unless it is warranted by the powers vested in that department by the Constitution. Whenever an act purporting to be a statute passed by the Legislature is an act which the Constitution prohibits, or does not authorize, and such act is sought to be enforced as law, it is the duty of the Courts to declare it null

and void. This is a delicate and responsible duty. The Legislative Department, as a co-ordinate and independent branch of government, is entitled to full confidence and respect, and any encroachment upon its powers by the judiciary would justly be deemed unwarrantable, and would tend to subvert all law and order. But the Constitution imposes upon this Court the duty of administering all laws under the Constitution, and no judge who is worthy of the name dares to shrink from its performance. But the Court is never warranted in declaring a law unconstitutional, unless in cases where the rights of persons are necessarily affected by the law, and where there are no other clear and valid grounds on which the judgment may be based. See Marshall, C. J., in *Ex parte Randolph*, 2 Brock, 472; Shaw, C. J., in *Norwich vs. Hampshire*, 16 Pick., 61; Johnson, J., in *Frees vs. Ford*, 6 N. Y., 177; *Roosevelt vs. Godard*, 52 Barb., 545.

From my view of this case, it will appear that a decision upon the constitutionality of the Master and Servant Act is not called for, and therefore it is improper for me to volunteer to give it. But this must not lead to the inference that any doubt exists of the right and duty of the Court to decide such a question, when necessarily raised in *habeas corpus*, nor that, by not passing upon it now, I either intimate a doubt of the constitutionality or the illegality of that act. In thus expressly confining myself to the points requiring judgment, I disclaim all inferences or presumptions as to my views on other points.

I will first consider the legality of the mittimus, which is in the native language, and may thus be rendered: "To the Marshal of the Hawaiian Islands: Whereas Ah Sun, No. 1, was convicted in the Police Court of Hilo, of the offence of refusing labor, and was then and there sentenced to be imprisoned at hard labor until he consent to return to work for the agents and owners of Met. Plantation: Therefore you are strictly enjoined to execute this sentence.

Given under my hand this 29th day of June, 1870.

D. H. HITCHCOCK,

Police Justice of Hilo."

It is claimed that the mittimus is fatally defective in not limiting the imprisonment to three months, according to the Act of 1860, amending Section 1420 of the Civil Code, and in failing to show by whom the suit is brought, or the date of the conviction and sentence, or that any trial was had. I think it is desirable that the mittimus set forth the offence more precisely, as a "willful refusal" to serve the prisoner's master, naming him, "according to the terms of his contract," or "according to the orders of the Court on a second commitment for the same offence," as these are different offences, requiring different judgments. But in view of the poverty of the native language in words of legal intent, perhaps the words "Hoole hana" (refusing work) may be regarded as sufficiently descriptive of the offence. The amended return, filed by the respondents and admitted by the petitioner, finds that the suit was brought by one Husbands, agent of Theo. Metcalf's legal representatives, and manager of the Metcalf Plantation, for desertion by the petitioner from service under the contract on file. This disposes of several of the objections named. But I do not think, in any view, that the mittimus can be held good in its statement of the sentence, "to be imprisoned at hard labor until he consent to work for the agents and owners of the Metcalf Plantation." There will be agents and owners of this plantation as long as it remains a plantation. Shall the prisoner remain in jail until he dies, unless he consent to work for them, whoever they may be? Is this a sentence which the law can sanction? How can the Marshal ascertain the legal limit of such imprisonment? It is neither his duty nor his right to ascertain to whom the prisoner owes service. He has no discretion to decide whether the prisoner's legal masters are those who owned and were agents of the plantation at the date of the sentence, or at some other date. Section 1419 authorized the justice to order the offender "to be restored to his master," and that he, the offender, "shall be compelled to serve not to exceed double the time of his absence, in the discretion of the Court;" Section 1420 provides that "if any such person shall refuse to

serve according to the provisions of the last section or the terms of the contract," the justice on hearing the case, if the refusal be persisted in, may "commit such person to imprisonment, there to remain at hard labor, until he will consent to serve according to law." Shall any executive officer determine the prisoner's law for him, and decide who may legally claim his services? It may be said that the prisoner should "know his own master." He may have thought so himself, but therein the Court that tried him failed to coincide. It was for the Court alone to decide and make known its decision on that matter.

In Cooper's case on *habeas corpus,* 3 Hawn., 17, the Court discharged the prisoner because his sentence was less than that which the law prescribed, and the full Court on review affirmed that decision. In Apuna's case (see *post,* Appendix), likewise on *habeas corpus,* the prisoner was discharged because the Court had not exercised its functions of sentencing to imprisonment at hard labor for non-payment of fine only, or fine and costs, but had delegated to the Marshal to decide whether to extend the imprisonment to cover costs, or not. This case is far stronger than those. If indefinite imprisonment like this be allowed, there would be little security for the person, and those time-honored safeguards of liberty which the Constitution of this Kingdom has placed around us would be of little value. I regard the mittimus as fatally defective, then, in omitting to name any persons as the masters to whose service the prisoner must return in order to terminate his imprisonment. There are reasons of peculiar force why this degree of certainty is requisite. Take for instance the case of one sentenced to be imprisoned until he consent to serve a person not in being, who has remained in jail until his time for appeal or writ of error has expired, shall he have no remedy by *habeas corpus,* but be told that he should have ascertained this legal impediment sooner, so that the Circuit Justice and Circuit Court might have decided about the facts, and determined the law for him before he came here? See *Feeley's Case,* 12 Cush., 58. That it is proper to discharge the prisoner on *habeas corpus* for such defect, is clearly established by the decision of the full bench in Cooper's case.

I should not hesitate to base my decision upon this point alone, but there are other reasons of perhaps greater force. It is claimed by the petitioner, that on the return and amended return, showing Metcalf's death, and the contract under which the suit was brought, a want of jurisdiction of the magistrate over the prisoner's case appears. The respondent's counsel deny that the Court can take cognizance of Metcalf's death, or of any questions affecting the validity of the contract, or which might arise, admitting the death to have occurred. It was urged by them that these matters require evidence, and an examination of facts and circumstances, which they were entitled to have tried by a jury of the vicinage, and on which they were entitled to the views of the local Circuit Justice and Court by regular appeal, until brought to this Court in banco, for consideration of the legal questions involved; and that they should not, in this summary mode, be compelled to bring witnesses here from a distance, passing by the tribunals established nearer their own door.

If there were controverted facts, or if the contract were not presented at the instance of the respondents, as the basis of the trial in the Court below, and if the respondents were not in Court as the heirs and legal representatives of Metcalf, these views would have force. It will appear that I do give them certain force. I declined to hear evidence tending to show the invalidity of the contract by reason of fraud, duress, or otherwise, or that its assignment by Rogers was not assented to by the prisoner. I cannot decide questions which were properly within the discretion and jurisdiction of the magistrate. I must assume it to be true, that it was proved to the magistrate by legal evidence that this contract with John S. Rogers was legally entered into and signed by the petitioner, and that Rogers assigned the same as alleged to "Theo. Metcalf, his representatives and assigns." But assuming the contract to be all that is claimed for it, I cannot decline to notice these facts, presented on the return and amended return, viz.: That the suit before the magistrate was brought on this contract, indorsed as alleged,

at the instance of Metcalf's legal representatives, and of the owners of the Metcalf plantation, that the judgment was founded thereon, and that the petition now before me is opposed by the heirs and legal representatives of Metcalf, and by one claiming as his surviving partner.

I shall consider these matters solely with reference to the magistrate's jurisdiction. It is scarcely necessary to allude to the well-known principle of law, that the jurisdiction of inferior courts is never presumed, but must affirmatively appear. The jurisdiction must appear as well over the persons to be affected, as the subject matter, or "the judgment will be as utterly void as though the Court had undertaken to act where the subject matter was not within their jurisdiction." *Bloom vs. Burdick,* 1 Hill, 139. In *Ex parte Randolph, ubi supra,* Mr. Justice Barbour, after deciding that *habeas corpus* lies only where the process is actually void, says: "for void process is the same thing as if there were none at all; and then the party is imprisoned without any authority whatever. Hence, the question would seem naturally to arise, whether the auditor had jurisdiction in the case—in other words, whether the person and the subject matter are such as to bring the case within the jurisdiction of the Act of Congress—for these are the criteria of jurisdiction." "If a Court assumes to act in a case over which the law does not give it authority, the proceedings and judgment will be altogether void." Cooley's Const. Lims., p. 398; Shaw, C. J., in *Vose vs. Morton,* 4 Cush., 29; and in *Clarke's Case,* 12 Cush., 320.

Had the magistrate jurisdiction over the person and subject matter in this case?

The contract purports to have been made in Macao, in China. Foreign contracts, to be enforceable here against the person, must conform to our laws, particularly to the requirements specified in Section 1418. The only extension in their favor is, that they may be made for ten years, and that no limit is placed upon the age of the servant, whereas domestic contracts can be for only five years, and the servant must be twenty years of age, or have the assent of parent or guardian. Admitting that

this contract is penally enforceable in favor of any person to whom Rogers may assign it, I think the least that the statute requires is, that such persons shall be persons in being and designated by name at the time of the transfer. True, Metcalf may have had dormant or known partners, and they may now be his assigns or representatives. But the contract was not assigned to them as partners, and it is only as surviving partners of a firm that they can claim the benefit of the statute. Section 1425 provides that the contract is discharged at the master's death, unless it was made with a company of individuals, of whom there are surviving partners. A contract made as this was, with Rogers and any to whom he may transfer it, is not a written contract with another, or with any partnership, as is required by Sections 1418 and 1425. This is going back to the original contract, without reference to the assignment by Rogers, for of course Rogers could assign, in writing or by parol, no greater rights under that contract than it secured to himself. I admit that the contract itself contains no stipulation that its assignment shall be in writing, or subject to the prisoner's assent. It provides that the prisoner shall enter into the service of J. S. Rogers for eight years, and that during that period he will "work for the benefit of Mr. J. S. Rogers, or for whomsoever he may transfer the contract."

But no contract for personal services gives a Police Magistrate jurisdiction for enforcing it by imprisonment, in the absence of fraud, except by force of the Master and Servant's Act. No such contract of an adult is enforceable by the common law of England or America. 1 Hurd on Freedom and Bondage, §§143, 211. It is a law deemed by the Legislature to be requisite to the needs of this country, and of the policy of the law they are the sole judges. But as it is a law against the liberty of the subject, its meaning can not be enlarged by intendment or inference by the Courts. This is the old maxim of English law, *Angliae jura in omnia casu libertati dant favorem.* In doubtful cases of Englishmen's rights, the odds shall be in favor of liberty. The magistrate's criminal jurisdic-

tion over these cases is confined by the statute to written contracts signed by the servant, between the servant and another, or others forming a co-partnership. This cannot be denied, and imprisonment on a contract not written and signed, is clearly illegal and relievable on *habeas corpus*.

Even under the strict apprentice acts of Elizabeth, once in force in the American colonies and some of the states of the United States, and to some extent now in force in the latter, the contract was not assignable; for, says Kent, vol. 2, p. 265, upon the master's death, the end and design of this personal trust cease. See *Baxter vs. Barfield,* Str. 1266; *Coventry vs. Woodhull,* Dougl. 134; *Hall vs. Gardner,* 1 Mass., 178; *Davis vs. Coburn,* 8 Mass., 302; *Commonwealth vs. Van Lear,* 1 S. & R., 248.

I do not regard that a contract enforceable under this penal statute, and within its meaning, unless it is in writing, designating the parties either by name, or in such a manner that they can be ascertained precisely at the date of the contract.

It is unnecessary to comment on the wisdom of a statute restricting the enforcement by penal servitude of contracts for labor, to those which are made in writing with another, or with a firm; or on considerations which might arise on a law which allowed the penal enforcement of contracts between parties not named or ascertained at the date of the contract. Nor will I consider what if any force our Statute of Frauds would have on contracts of the latter description; suffice it to say, that the present contract is not, in my opinion, penally enforceable in favor of the respondents, and therefore that it gave the magistrate no criminal jurisdiction over the prisoner. The proceedings at the trial must therefore be held void. Let the prisoner be discharged with costs, except those incurred in consequence of the amendment of the petition.

*W. C. Jones & H. Thompson,* for petitioner.

*The Attorney-General* (R. H. Stanley) & *C. C. Harris,* for respondents.

Honolulu, August 5, 1870.